IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:24-cv-00527-FL

| | | |
|---|---|---|
| NORTH CAROLINA FARM BUREAU FEDERATION, INC., Et al., | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| vs. | ) ) ) | **PLAINTIFFS REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| UNITED STATES DEPARTMENT OF LABOR, et al., | ) ) ) | |
| *Defendants.* | ) | |

## <u>INTRODUCTION</u>

Defendants promulgated the Final Rule to provide foreign agricultural guest workers and the domestic employees who work alongside them with the right to self-organize and engage in concerted activity. Defendants assert the Immigration Reform and Control Act of 1986 ("IRCA") gives them sweeping regulatory authority for its action. But Defendants' claim is fatally flawed because the Final Rule plainly conflicts with Congress' decision almost 90 years ago to deny all agricultural employees these same rights under the National Labor Relations Act ("NLRA"). Two federal district courts have preliminarily enjoined the Final Rule for this reason. *Kansas v. United States Dep't of Lab.*, No. 2:24-CV-76, 2024 WL 3938839, at *9 (S.D. Ga. Aug. 26, 2024); *see also Barton v. United States Dep't of Lab.,* 5:24-CV-00249, D.E. 49, at 19 (E.D. Ky Nov. 25 2024).[1] Only days ago another district court issued a nationwide stay of the Final Rule, concluding that Defendants lacked statutory authority to support its regulatory power grab.

---

[1] A copy of *Barton* is attached as Exhibit 1.

*International Fresh Produce Ass'n v. U.S. Dep't of Labor*, 24-cv-00309-HSO-BWR, D.E. 35, at 20 (S.D. Miss. Nov. 26, 2024) ("*IFPA*").[2]

None of Defendants desperate attempts to save the Final Rule have merit. The Final Rule is unlawful and must be set aside and vacated. 5 U.S.C. § 706(2).

## ARGUMENT

### I.    The Final Rule Is Unlawful Because It Conflicts With The NLRA.

"Language in a regulation . . . may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). The Final Rule's self-organizing and concerted action provisions contradict the plain language of the NLRA, which explicitly exempts agricultural workers from enjoying the same rights. *See* 29 U.S.C. § 152(3) ("The term 'employee' . . . *shall not* include any individual employed as an agricultural laborer." (emphasis added)); *Kansas*, 2024 WL 3938839, at *7 ("[T]he NLRA reflects Congressional intent to not create such a right."). Defendants offer no argument that warrants a different conclusion.

First, there is no meaningful distinction between the rights provided by the NLRA and those bestowed on farmworkers in the Final Rule. The Final Rule's language "mirrors that of the NLRA." *Kansas,* 2024 WL 3938839 at *7-8.; *compare* 89 Fed. Reg. 34,005 (protecting "concerted activity for mutual aid and protection which encompasses numerous ways that workers can engage, individually or collectively, to enforce their rights"), *with* 29 U.S.C. § 157 (protecting "engag[ing] in [ ] concerted activities for the purpose of collective bargaining or other mutual aid or protection"). It also incorporates rights that have evolved from text of the NLRA. *See* D.E. 13 at 11-12. While it is true the Final Rule does not extend all of the NLRA's collective bargaining rights to H-2A workers, that makes little difference here. The Final Rule's

---

[2] A copy of *IFPA* is attached as Exhibit 2.

effect is to give agricultural employees certain statutory rights that they do not have under the NLRA. In so doing, Defendants wrongfully assumed Congress' lawmaking duties. *Alexander* 532 U.S. at 291 ("Agencies may play the sorcerer's apprentice but not the sorcerer himself.").[3]

Defendants do not grapple with this common-sense argument. Rather, they paradoxically assert that Congress' decision to exempt agricultural employees from the NLRA left the regulatory door open for them to extend NLRA-style rights to foreign agricultural employees. This interpretation flies in the face of logic and federal precedent. Moreover, the cases Defendants' cite in support of their position involve challenges to state legislation, which is not at issue here. *See Barton*, Ex. 1, 20-21 (rejecting this authority for the same reason). Finally, Defendants' arguments that the Final Rule cannot confer NLRA-style rights because Defendants' expressly disclaim doing so falls flat. As the Eastern District of Kentucky has stated, "the DOL cannot confer substantive rights on parties simply by *saying* it is not doing so." *Barton*, Ex. 1, 24.

Second, Defendants argue that since neither *Garmon* preemption nor *Machinist* preemption apply, the Final Rule does not conflict with the NLRA. D.E. 36, at 26. (citing *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Emp. Rels. Comm'n,* 427 U.S. 132, 144 (1976); *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon,* 359 U.S. 236, 244 (1959)). However, federal preemption has nothing to do with this case. To the extent it does, Defendants' analysis is inaccurate. None of the labor law preemption cases Defendants cite address an NLRA provision that denies regulatory authority to the federal government while deliberately leaving that regulatory authority to the States, as is the case here. Moreover, *Garmon* preemption arguably applies to the Final Rule because the NLRA prohibits

---

[3] Defendants attempt to distinguish *Alexander* as limited to only private right of action statutes is puzzling. Defs' Br. at 21-22. *Alexander* stands for the elementary proposition that an agency may not create rights in the absence of congressional authorization. 532 U.S. at 291. That is precisely what Defendants did with the Final Rule. Moreover, *Kansas* and *Barton* both cited *Alexander* in barring Defendants from enforcing the Final Rule. *Kansas,* 2024 WL 3938839 at *7-8; *Barton*, D.E. 49 at 19.

federal authority over the self-organization and concerted action rights of agricultural workers by clearly stating "employees" with these rights "*shall not include*" agricultural workers. *See* 29 U.S.C. § 152(3) (emphasis added); *see UAW-Lab. Emp. & Training Corp. v. Chao,* 325 F.3d 360, 364 (D.C. Cir. 2003) (explaining *Garmon* preemption applies to "activities arguably protected or prohibited"). Defendants cannot simply discount this "shall not include" language because it appears in a definition. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 44 (2024) ("[A] court must respect definitions by Congress as 'virtually conclusive[.]'"). Put simply, Congress did not haphazardly exempt agricultural employees from the NLRA.

What Congress did was to allow States to make policy decisions about whether agricultural workers could collectively bargain and engage in concerted activities. Indeed, the NLRA does not preempt states from regulating agricultural workers' collective bargaining rights "on the ground that such activity is either protected or prohibited by the NLRA[.]" *Willmar Poultry Co. v. Jones*, 430 F. Supp. 573, 577 (D. Minn. 1977); *see also United Farm Workers of Am., AFL-CIO v. Arizona Agr. Emp. Rels. Bd.*, 669 F.2d 1249, 1256 (9th Cir. 1982) ("Nor has Congress . . . precluded the states from regulating the collective bargaining process in the agricultural industry."). Absent clear congressional direction, federal agencies may not reverse this policy choice. *Alexander* 532 U.S. at 291.

In sum, there is "no evidence of federal Congressional intent to create a right to collective bargaining for agricultural workers." *Kansas*, 2024 WL 3938839, at *9. Defendants still have not offered any. Defendants overstepped their limited regulatory authority by granting NLRA-style rights to H-2A workers. On this ground alone, the Final Rule is unlawful and must be set aside.

4

## II.    The Final Rule Exceeds the USDOL's Limited Authority Under IRCA.

In attempt to recuse the Final Rule, Defendants contend they have broad authority to justify the Final Rule. They assert that a few limited provisions of IRCA's § 1188 allow them to give agricultural workers self-organizing and concerted action rights that Congress intentionally denied them under NLRA. But as the Eleventh Circuit has noted, "Congress granted the Department of Labor . . . limited rulemaking authority over the agricultural H-2A program." *Bayou Lawn & Landscape Servs. v. Sec'y of Lab.*, 713 F.3d 1080, 1083 (11th Cir. 2013).[4] Indeed, Section 1188(c)(3)(A) only authorizes USDOL to certify that the "criteria for recruitment of eligible individuals" has been met. Certifying that a criterion is met is not the same as being delegated broad rulemaking authority—much less, authority so broad as to allow Defendants to invent new substantive rights. Further, Section 1188(c)(3)(A) does not directly mention rulemaking at all. *See Bayou Lawn*, 713 F.3d at 1084 (finding consultation authority under H-2B program contains "no grant of rulemaking authority to DOL").[5] This is unlike Congress's explicit authorization of the Secretary to engage in rulemaking by using the term "regulation" in other contexts. *See* §§ 1188(a)(1)(2) (authorizing application fees); § 1188(c)(4) (authorizing housing regulations).

Defendants now claim their statutory authority stems from scattered subsections of § 1188(c), which the Final Rule does not reference. Defendants cannot invoke this type of authority after the fact. *See Appalachian Voices v. United States Dep't of Interior*, 25 F.4th 259,

---

[4] Defendants' reliance on *AFL-CIO v. Dole*, 923 F.2d 182, 187 (D.C. Cir. 1991) for the proposition that the USDOL received a "broad" grant of authority in this context is misguided. *Dole* was decided before *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). While *Dole* did not expressly defer to the agency interpretation of the statute at issue, the *Dole* court relied on a footnote in a case that did. *Id.* at 185 (citing *AFL-CIO v. Brock*, 835 F.2d 912, 913 n.2 (D.C. Cir. 1987)).

[5] While *Bayou Lawn* recognized that USDOL has rulemaking authority under the H-2A program, that court ruled that USDOL's authority stemmed from 8 U.S.C. § 1101(a)(15)(H)(ii)(a), which merely allows USDOL to define "agricultural labor services." Plaintiffs do not dispute that the USDOL may define similar terms by regulation, but defining terms is a far cry from the expansive power that USDOL asserted when promulgating the Final Rule.

269 (4th Cir. 2022). Moreover, reading § 1188(c)(3)(A) to confer broad rulemaking authority would violate the canon against surplusage because it would obviate the need for those provisions that gave Defendants narrow rulemaking authority over, for instance, housing requirements or defining labor services. *See City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 159 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). As the Southern District of Mississippi concluded, "nothing in the text of the [Immigration and Naturalization Act] supports Defendants' position that DOL possesses the broad authority to prescribe regulations conferring collective rights upon agricultural H-2A workers." *IFPA*, Ex. 2, 23 (citing *West Virginia v. EPA*, 597 U.S. 697, 723 (2022)).

### III.     The Final Rule Fails Under the Major Questions Doctrine.

Even assuming that Defendants possess a "broad congressional delegation" to adopt the Final Rule, *see* D.E. 36, 22, which it does not, the major questions doctrine dooms the Final Rule. To avoid the doctrine's application, Defendants contend the Final Rule is distinguishable from the regulations invalidated in other major questions cases. D.E. 36 at 22 (citing *West Virginia*, 597 U.S. at 723; *Nebraska v. Biden*, 600 U.S. 482, 494-95). Defendants also—*in a footnote*—try to brush off binding Fourth Circuit authority: *N.C. Coastal Fisheries Reform Grp. v. Capt. Gaston LLC*, 76 F.4th 291 (4th Cir. 2023). D.E. 36 at 22, n. 11. But this is clearly a major questions case.

IRCA's grant of limited *certification* authority to the USDOL "indicates that Congress did not mean to regulate the issue in the way claimed." *N.C. Coastal Fisheries,* 76 F.4th at 297. As previously discussed, the NLRA is a "distinct regulatory scheme" that directly "conflict[s] with the agency's newly asserted authority." *See id*. Further, Defendants assert "new-found

powers" to bestow concerted action rights upon agricultural employees, despite never asserting this authority in the almost forty years since the IRCA was enacted, and despite significant "federalism concerns." *See N.C. Coastal Fisheries*, 76 F.4th at 297. Thus, this case is indeed "significant," and the Final Rule is unlawful pursuant to the major questions doctrine.

Defendants also unsuccessfully attempt to differentiate this case as less significant than others in which the Supreme Court applied the doctrine. However, Defendants miss the fact that interpreting IRCA to grant broad authority to extend NLRA-style rights to agricultural employees "would give [USDOL] power over a significant portion of" the United States' and North Carolina's substantial agricultural economies. *Id.* at 299; s*ee also* SMF ¶11. Defendants further overlook that Defendants' granting of self-organizing rights to agricultural employees through the Final Rule would be a monumental change to United States labor law.

Additionally, Defendants argue that they have identified broad rulemaking authority to promulgate the Final Rule, which they claim will prevent adverse effects to workers in the United States. However, there must be "clear authorization from Congress before [the Court] adopt[s] an expansive construction of the statute[.]" *N.C. Coastal Fisheries*, 76 F.4th at 297 (cleaned up). As discussed above, IRCA does not grant Defendants' with broad rulemaking authority, much less the power to promulgate any rule that they say will protect American workers from being adversely affected by H-2A workers. Doing so would give Defendants virtually "unlimited power." *Biden v. Nebraska*, 143 S. Ct. 2355, 2372 (2023). There would be no limit on what Defendants could do as long as they purported to find that their actions protected American workers, even if that regulation violated another statute, as is the case here. The fact that Defendants have promulgated other H-2A regulations is irrelevant to determining whether they have authority to promulgate the specific regulation here, which they do not.  In

7

sum, Defendants cannot show that Congress clearly authorized them to grant H-2A workers NLRA-style rights. Thus, the Final Rule is unlawful and must set aside, pursuant to the Major Questions Doctrine.

## IV. The Final Rule is an Arbitrary and Capricious Agency Action.

Finally, the Final Rule is arbitrary and capricious because Defendants "relied on factors which Congress has not intended [they] consider" when promulgating it. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Congress explicitly exempted agricultural employees from the NLRA's collective bargaining protections. Thus, Congress could not have intended to authorize Defendants to extend similar NLRA rights to H-2A workers under federal immigration law. As the Southern District of Georgia properly found, there is "no evidence of federal Congressional intent to create a right to collective bargaining for agricultural workers." *Kansas*, 2024 WL 3938839, at *9. Consequently, Defendants "took into account considerations that Congress could not have intended to make relevant" and therefore "its action proceeded from an erroneous premise and [its] decision cannot stand." *D.C. Fed'n of Civic Associations v. Volpe*, 459 F.2d 1231, 1247 (D.C. Cir. 1971) (internal quotations and citations omitted).

Moreover, Defendants' explanation for the Final Rule is not plausible because they cannot establish a "rational connection between the facts found and the choice made." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. Defendants claim the Final Rule would "neutralize[ ] any 'adverse effect'" on domestic farmworkers by discouraging employers from exploiting the H-2A program for cheap labor instead of hiring domestic workers. 89 Fed. Reg. at 33,992, 33,900. However, this rationale overlooks that employers can only hire H-2A workers if the USDOL certifies a lack of sufficient domestic workers for the job, implying that the

explanation would only hold if the USDOL failed to do its job at the certification stage. Thus, any link between Congress's intent to protect American workers and granting self-organizing rights to foreign workers is far from clear. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("[T]he agency's explanation [must be] clear enough [such] that its path may reasonably be discerned." (cleaned up)). By Defendants' logic, *any* benefit to given to H-2A workers could be seen as preventing adverse effects on American workers, an implausible assertion.

Defendants' responses to public comments fare no better. Defendants not only disregarded congressional intent, but also assert unfettered autonomy to regulate farmworker rights. Despite acknowledging opposition to the Final Rule's NLRA-styled mandates, the Defendants offered a contradictory response, asserting that the Final Rule will not preempt favorable state laws. Defendants failed to address comments relating to laws that expressly prohibit collective bargaining, or states, like North Carolina, that have declined to grant collective bargaining rights to agricultural workers. Nor, as Defendants suggest, is "silence" non-conflicting, D.E. 36 at 24. The Final Rule usurps North Carolina's right to make its own policy decisions relating to collective bargaining for agricultural workers. Because Defendants "failed to respond to 'significant points' and to consider 'all relevant factors' raised by the public comments" their "decision [is] arbitrary and capricious." *City of Columbus v. Cochran*, 523 F. Supp. 3d 731, 772 (D. Md. 2021).

### V. The Court Should Find The Entire Final Rule Unlawful, Set It Aside, and Vacate It.

The Final Rule is unlawful and must be set aside and vacated. 5 U.S.C. § 706(2). Defendants' arguments to the contrary are absolutely wrong. First, the entire Final Rule is unlawful. The Final Rule's severability clause does not save its unchallenged provisions because

9

Defendants cannot show that they would have promulgated the Final Rule "without the offending section[ ]." *Mayor of Baltimore v. Azar*, 973 F.3d 258, 292–93 (4th Cir. 2020). Moreover, it is clear that Defendants "intended the Final Rule to stand or fall as a whole" because Defendants promulgated "a single, coherent policy, the predominant purpose of which" is to grant NLRA-style rights to agricultural workers. *Id.* There is no evidence of how the Final Rule would operate without these provisions.

Second, vacatur of the entire Finale Rule is the appropriate remedy. Nevertheless, Defendants' attempt to confuse this issue stating that Plaintiffs slept on their rights. Not so. Here, Plaintiffs promptly filed suit and chose to proceed directly to the merits given the strength of their case. And "unlike at the preliminary-injunction stage when the [c]ourt ha[s] broad discretion to fashion appropriate preliminary relief," *Texas v. U.S. Dep't of Labor,* __F.Supp.3d__, 2024 WL 4806268 at \*25 (N.D. TX, Nov. 15, 2024), at the merits stage, the Administrative Procedure Act *requires* reviewing courts to "hold unlawful and set aside" invalid agency action, 5 U.S.C. § 706(2). (emphasis added). *See also Nat'l Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) ("[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2463 (2024) (Kavanaugh, J., concurring) (stating "Federal Government and the federal courts have long understood §706(2) to authorize vacatur . . . ."); *Texas,* 2024 WL 4806268 at \*25-26 (vacating USDOL's 2024 Overtime rule); *New York v. United States Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 579–80 (S.D.N.Y. 2019) (vacating entire rule and declining to limit relief to plaintiffs.)

**CONCLUSION**

Plaintiffs respectfully request the Court enter summary judgment in their favor, holding the Final Rule unlawful and either setting aside, enjoining, or vacating the Final Rule.

Respectfully submitted this the 27th day of November 2024.

NELSON MULLINS RILEY
& SCARBOROUGH LLP

By: /s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Alyssa M. Riggins
N.C. State Bar No. 52366
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
Phil.strach@nelsonmullins.com
Alyssa.riggins@nelsonmullins.com

Phillip Jacob Parker, Jr.
Secretary & General Counsel
North Carolina Farm Bureau
Federation, Inc.
PO Box 27766
Raleigh, NC 27611
(919) 987-1244
N.C. Bar No. 41504
jake.parker@ncfb.org

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November 2024, I electronically filed the foregoing **Plaintiffs Reply In Support of Motion for Summary Judgment** with the Court using the CM/ECF system, which will serve a copy of the same on all counsel of record.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

By: /s/ Phillip J. Strach
Phillip J. Strach
N.C. State Bar No. 29456
Alyssa M. Riggins
N.C. State Bar No. 52366
Raleigh, North Carolina 27603
Telephone: (919) 329-3800
Facsimile: (919) 329-3799
Phil.strach@nelsonmullins.com
Alyssa.riggins@nelsonmullins.com

Phillip Jacob Parker, Jr.
Secretary & General Counsel
North Carolina Farm Bureau
Federation, Inc.
PO Box 27766
Raleigh, NC  27611
(919) 987-1244
N.C. Bar No. 41504
jake.parker@ncfb.org